IN THE U.S. DISTRICT COURT FOR

THE NORTHERN DISTRICT OF FLORIDA

WAYNE A.G. JAMES,

PLAINTIFF

VS.

UNITED STATES GOVERNMENT

DEFENDANT

CIVIL ACTION FILE NO.

3:22-CV-18025-TKW-HTC

## COMPLAINT

NOW COMES Wayne A. G. James, plaintiff in the above-styled action, and files this complaint against the United States Government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680, and in support shows as follows:

## 1. INTRODUCTION

The plaintiff entered federal prison with the pre-existing medical condition known as glaucoma, a condition whereby, if untreated, abnormally high ocular pressure causes irreversible, irreparable damage to optic nerves, resulting in irreversible loss of vision. Glaucoma is a treatable condition, the aim of any treatment regimen being to reduce, then maintain, ocular pressure to within normal range, thereby preventing damage to optic nerves and the attendant loss of vision.

For his eye condition, in September of 2016, while detained at the Metropolitan Detention Center, Guaynabo, Puerto Rico (MDC Guaynabo, PR), Plaintiff was prescribed Timolol ophthalmic solution (0.25%) after it was determined that Levobunolol (Betagan) ophthalmic solution (0.5%) was unavailable (Plaintiff had been using Betagan successfully for more than 20 years.).

Plaintiff was released on bail on October 7, 2016; and between then and August of 2018, Plaintiff continued using the Timolol as prescribed by the ophthalmologist at MDC Guaynabo, PR. After the August 2018 trial, Plaintiff was remanded to MDC Guaynabo, PR, but was not administered an ocular examination until December of 2018, almost five (5) months later.

In February of 2019, while en route to Federal Prison Camp, Pensacola, Florida (FPC, Pensacola, FL), Plaintiff noticed for the first time a decline in his vision. Plaintiff arrived at FPC Pensacola, FL, on March 6, 2019, and notified the medical staff immediately upon his arrival, during the intake process, of a noticeable decline in his vision. Plaintiff asked to see an ophthalmologist. Plaintiff was told that he was ineligible to see an ophthalmologist before December of 2019 because he had seen an ophthalmologist in December of 2018. He was told he could only see an ophthalmologist prior to December of 2019 "if you have a catastrophic injury to your eyes, or if you go blind." Additionally, the medical staff at FPC Pensacola, FL,

informed Plaintiff that he would not be receiving the eyeglasses that were prescribed by the ophthalmologist at MDC Guaynabo, PR, because that prescription was hand-written and the FPC Pensacola, FL, glasses provider would not accept hand-written glasses prescriptions. Plaintiff told the medical staff that he needed the glasses not only as a vision aid, but also to protect his eyes from damage from the sun's Ultraviolet rays.

Between March of 2019 and September of 2019, Plaintiff submitted numerous "Requests to Staff," informing the medical staff of his rapidly declining vision and asking to see an ophthalmologist, but to no avail. In September of 2019, six (6) months after arriving at FPC Pensacola, FL, Plaintiff wrote the Warden requesting medical attention for his vision loss, the Warden ordering a furlough for Plaintiff to see an optometrist in Pensacola, Florida.

Upon conducting extensive testing, the Pensacola optometrist determined that Plaintiff's ocular pressure was catastrophically high, more than 30 in each eye, ocular pressure of 10 considered normal, and ocular pressure exceeding 20 indicative of glaucoma. The optometrist also concluded that as a result of the catastrophically high ocular pressure, Plaintiff had sustained extensive, irreparable, irreversible damage to his optic nerves. The optometrist determined that Timolol should be replaced by Latanaprost, and he recommended immediate glaucoma surgery. Plaintiff was returned to FPC Pensacola, FL, where he immediately began taking Latanaprost as prescribed. In order to ascertain

the efficacy of the newly prescribed Latanaprost, however, Plaintiff immediately began sending "Requests to Staff" directed to the medical staff, asking to have his ocular pressure checked so as to ensure that Latanaprost was effectively maintaining his ocular pressure at safe levels. Plaintiff's numerous requests for medical assistance and attention from the medical staff were ignored for five (5) months, until in February of 2020, Plaintiff again wrote to the Warden, who granted another furlough. While on this 2nd furlough, Plaintiff saw an ophthalmologist who, after conducting extensive tests, determined that Plaintiff's ocular pressure was catastrophically high (above 30 in each eye) and further determined that surgery should be performed posthaste.  The ophthalmologist also replaced the previously prescribed Latanaprost with Timolol and Brimonidine. Pending the arrival of the newly prescribed medicines, the doctor provided Plaintiff with Combigan.

On June 1, 2020, Plaintiff was released from FPC, Pensacola, Fl.  On July 14, 2020, Plaintiff was seen by his private Georgia ophthalmologist who, after conducting extensive tests, determined that Plaintiff's ocular pressure was catastrophically high (more than 30 in each eye) and also determined that the medication that had been prescribed by the Pensacola ophthalmologist in February of 2020 was not efficacious. The private Georgia ophthalmologist (Dr. Khator Parul) prescribed a "cocktail" of four (4) ophthalmic solutions, namely Rocklatan, Brimonidine, Timolol, and Latanaprost. On the follow-up visit five (5) days later, Dr. Parul determined that the four-drug

"cocktail" had reduced Plaintiff's ocular pressure to 10 in the left eye and 11 in the right eye. This reduction of Plaintiff's ocular pressure to normal levels effectively halted any further pressure-related damage to his optic nerves. The extensive, irreparable, irreversible damage to Plaintiff's optic nerves that occurred during his incarceration at FPC, Pensacola, FL, could not be remedied, however. (Rocklatan was subsequently substituted by Dorzolamide, a less costly alternative.) The "cocktail" first prescribed by Dr. Parul, and then adopted by Dr. Dana Wallace, continues to be efficacious.

The above-described events are true, and they bear witness to the extreme, deliberate indifference on the part of the medical staff at FPC Pensacola, FL; and the above-described events demonstrate that the FPC Pensacola, FL, staff's willful indifference to Plaintiff's loss of vision, the prevention of which he repeatedly sought their assistance but to no avail, caused his irreversible, irreparable, irretrievable loss of vision. These events give ample evidence of complete, culpable, and willful negligence on the part of the staff at FPC, Pensacola, FL. Plaintiff's medical record is devoid of any other medical condition that could have caused or contributed to his catastrophic loss of vision.

## 2. PARTIES

The parties are: Wayne A.G. James, the plaintiff in the above-styled case; and the defendant, the United States Government. Suits brought under the Federal Tort Claims

Act (FTCA) can be maintained by federal prisoners against the United States to recover for personal injuries sustained during confinement in prison by reason of the negligence of government employees. <u>United States vs. Carlos Muniz</u>, 83 S. Ct. 1850 (June 17, 1963). 28 U.S.C.A. § 1346(b), 2671-2680. Support for the U.S. Government being the proper defendant for this lawsuit can be found in <u>Lopez vs. United States Government</u>, 68 F. Supp. Second, 688 (M.D.N.C., 1999).

3. <u>JURISDICTION AND VENUE</u>

The proper venue is the Northern District of Florida, in Pensacola, Florida. Since this claim is under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., "proper venue for an FTCA claim is the judicial district where the plaintiff resides OR wherein the act or omission complained of occurred." <u>Rodriguez v. Federal Bureau of Prisons,</u> 2022WL3344626 (August 12, 2022) U.S. District Court, S.D. Florida; <u>Wilson vs.</u> <u>Obama,</u> 770 F. Supp. 2nd 188 (DDC, 2011), quoting 28 U.S.C. § 1402(b). The jurisdiction is proper in the same aforementioned Northern District in Pensacola, Florida.

4. <u>FACTUAL ALLEGATIONS</u>

Petitioner incorporates herein by reference all the factual averments as set out in the above and foregoing Introduction.

A.

In September of 2016, while detained at MDC Guaynabo, PR, Plaintiff was prescribed Timolol ophthalmic solution (0.25%) after the medical staff at MDC Guaynabo, PR,

determined that Betagan ophthalmic solution (0.5%), which Plaintiff had been using successfully for more than 20 years, was unavailable;

B.

In February of 2019, while en route to FPC Pensacola, FL, Plaintiff noticed for the first time a decline in his vision;

C.

Upon arriving at FPC Pensacola, FL, during the prison intake process, Plaintiff informed the medical staff of his pre-existing glaucoma condition and notified said staff that he had detected a problem with his vision while in transit to FPC Pensacola, FL;

Plaintiff also notified the medical staff of his pending glasses that were prescribed at MDC, Guaynabo, PR;

.

In May of 2019, Plaintiff notified the medical staff of a noticeable decline in his vision and asked to see an ophthalmologist;

E.

Plaintiff was told he was ineligible to see an ophthalmologist before December of 2019 because he had seen an ophthalmologist in December of 2018 at MDC Guaynabo, PR, and that he could only see an ophthalmologist prior to December of 2019 "if you have a catastrophic injury to your eyes, or if you go blind";

Plaintiff was further informed that he must wait until he sees only "black, not just

shadows or gray," in order to see the ophthalmologist prior to December of 2019;

F.

Between May and September of 2019, Plaintiff submitted numerous "Requests to Staff" to the medical staff, informing its members of his rapidly declining vision and asking to see an ophthalmologist, but to no avail;

Plaintiff's requests went unheeded;

G.

In September of 2019, six (6) months after arriving at FPC Pensacola, FL, Plaintiff, in desperation, wrote to the Warden requesting medical attention for his loss of vision;

The Warden responded immediately, ordering that Plaintiff be granted a furlough to see an optometrist in Pensacola, Florida;

H.

During the furlough, the Pensacola optometrist conducted testing and determined that Plaintiff's intra-ocular pressure was catastrophically high, more than 30 in each eye, intra-ocular pressure of 10 considered normal, and intra-ocular pressure of 20 and higher indicative of glaucoma;

The doctor further determined that Plaintiff, as the result of the extremely high ocular pressure, had suffered extensive, irreparable, and irreversible damage to his optic nerves;

The doctor also determined that the Timolol ophthalmic solution Plaintiff was using

should be replaced by Latanaprost;

The doctor also recommended immediate glaucoma surgery;

I.

After experiencing further indifference on the part of the medical staff, and after a lapse of some five (5) months, throughout which period Plaintiff sought medical assistance and cooperation to no avail, Plaintiff was again forced to break ranks and write directly to the Warden, seeking intervention and assistance;

In February of 2020, five (5) months after the first furlough, the Warden approved a second furlough for Plaintiff;

J.

The outcome of the second furlough, after a series of tests revealed catastrophically high ocular pressure, was the replacement of Latanaprost with Timolol and Brimonidine, with Combigan being provided to Plaintiff pending the arrival of Timolol and Brimonidine;

The ophthalmologist of the second furlough also recommended that Plaintiff undergo immediate glaucoma surgery;

Plaintiff never received the glaucoma surgery recommended by the optometrist of the

September 2019 furlough or by the ophthalmologist of the February 2020 furlough;

K.

Meanwhile, by April of 2020, Plaintiff's vision had deteriorated so markedly that he had to be relieved of his bathroom-cleaning work detail since he was unable to effectively and safely perform his duties;

L.

In May of 2020, Plaintiff was transferred to special housing for infirm inmates at FPC Pensacola, FL;

M.

On June 1, 2020, Plaintiff was released from FPC Pensacola, FL, and was admitted on June 2, 2020, to Dismas Charities halfway house, where, on account of his lack of vision, he was assigned no work detail.

PART 5- COUNT 1- CLAIM AGAINST THE U.S. GOVERNMENT OF MEDICAL NEGLIGENCE ON THE PART OF FEDERAL EMPLOYEES UNDER THE FEDERAL TORT CLAIMS ACT ( FTCA )

Petitioner incorporates herein, by reference, the Paragraphs of the Factual Allegations (hereinabove); he realleges those assertions here.

This suit is authorized, United States v. Muniz, 374 U.S. 150 (1963). A duty of reasonable medical care is owed, by the U.S. government, to all federal prisoners.

a.      the actions and inactions as listed in Part 4- Factual Allegations, hereinabove, give evidence of both "deliberate indifference" to Plaintiff's serious medical needs, as a sufferer from glaucoma, as well as Negligent Treatment of Plaintiff's glaucoma while he was a federal inmate at the Federal Prison Camp in Pensacola, Florida;

b.  the medical staff who failed to properly treat Plaintiff's eye condition, leading to irreversible permanent loss of his vision, were acting within the scope of their employment during the period of time that they ignored Plaintiff's urgent need for immediate treatment of his catastrophically high intra-ocular pressure;

c.     if the said medical staff at FPC Pensacola *had* properly and carefully and responsibly treated Plaintiff's glaucoma, he would not have gone blind;

d.  the medical staff failed to adequately monitor Plaintiff's glaucoma condition;

e.  the medical staff failed to regularly monitor Plaintiff's intra-ocular pressure;

f.  the medical staff failed to timely arrange for glaucoma surgery;

g.  the medical staff failed to identify an efficacious "cocktail" of available glaucoma medications to effectively treat Plaintiff's condition;

## PART 5- COUNT 2- ATTORNEY'S FEES

Plaintiff incorporates here, by reference, each and every averment in Part 4 above, the Factual Allegations supporting this lawsuit.

h.  because of Plaintiff's condition, directly caused by the negligence of federal employees and medical staff at FPC Pensacola, FL, Plaintiff has been rendered into a state of near-total dependency and inability to support himself and take care of his basic needs ( without assistance from others);

i.     out of an attempt to secure a measure of justice and compensation from the tort-feasors who have caused and contributed so decisively to Plaintiff's catastrophic loss of vision in both eyes, the Plantiff seeks Attorney Fees as are allowed for under the statute,

28 U.S.C. § 2678, to compensate his Attorney for the many hours of consultation and research which were expended in drafting this Complaint for Money Damages ( no greater than 25% of any judgment or settlement that may be reached);

PART 5. COUNT 3.- PAST AND FUTURE ECONOMIC LOSSES

Plaintiff incorporates here, by reference, all the allegations as set out in his part 4, Factual Allegations.

j.        Plaintiff, when still in possession of his sight, had demonstrated substantial earning capacity as a member of the workforce, becoming a noted fashion designer upon his graduation from Georgetown University's Law Center, serving as Senator of the United States Virgin Islands, directing documentary films and ad campaigns, designing and marketing various luxury products, writing critically acclaimed books, conducting significant historical research, etc. His blindness, caused by the negligence of federal employees, has substantially curtailed his ability to earn income to support himself and take care of his material and medical needs;

PART 5. COUNT 4- COMPENSATORY AND SPECIAL DAMAGES

Plaintiff incorporates herein by reference each and every allegation in the above "Factual Allegations" section (Part 4). He reasserts those allegations here.

k. Loss of Earnings and Medical Expenses, and Pain and Suffering/Mental Distress (special damages) have been caused to Plaintiff by the negligence of the medical staff who are federal employees; the duty of adequate medical care owed to him was breached, causing severe permanent damage to Plaintiff;

l. Medical bills have accrued and will continue to accrue due to the damage caused by the negligent medical treatment provided by the medical staff at FPC, Pensacola, FL;

m.   As a result of the loss of vision caused by the defendant's negligence, Plaintiff, for the remainder of his life, will undergo increased living expenses as a result of having to employ several people to

assist him with tasks and duties he would otherwise have performed himself;

n. as a result of the loss of vision caused by defendant's negligence, Plaintiff, for the remainder of his life, will experience medical expenses directly related to his ocular care;

o. as a result of the loss of vision caused by the Defendant's negligence, Plaintiff has experienced severe mental distress as he has become increasingly aware of the realities of living without vision and the attendant reduced quality of life, reduced sense of physical safety, and fear of personal injury through accidents or intentional torts(crimes)   inflicted  upon him by others;

## PRAYER FOR RELIEF

Wherefore Plaintiff prays for :

a. monetary damages in the amount of  $15,000,000;

b. attorney's fees and costs of litigation;

c. compensatory and special damages;

d. such additional and further relief as the Court deems just and appropriate.

Respectfully submitted this ____16____ day of September, 2022.

s / Lloyd  J.  Matthews

Georgia Bar No. 477620

Attorney for Plaintiff

3011 Towne Mill Avenue

Canton, Georgia  30114
(404) 642-7350
lmmattmatthews@gmail.com

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

WAYNE A. G. JAMES,
PLAINTIFF                                          civil file no._____

VS.

UNITED STATES GOVERNMENT,
DEFENDANT

## CERTIFICATE OF SERVICE

As to the above and foregoing Complaint, I certify that I served that upon the United States Attorney, Northern District of Florida, along with a Summons, by mailing these in the U.S. mail – certified mail, return receipt requested- to:
Jason R. Coody, U.S. Attorney for the Northern District of Florida
21 East Garden Street
Suite 400
Pensacola, Florida 32502;
and similarly, I certify that I served the said Summons and Complaint to the United States Department of Justice
Attention: U.S. Attorney General
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530 ( by certified mail- return receipt requested);
and similarly I certify that I served the Summons and Complaint to the Assistant AG for Administration (Lee J. Lofthus)
Justice Management Division
Robert F. Kennedy Department of Justice Building
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530 ( once again, by certified mail- return receipt requested);
and I certify that I served the aforesaid Summons and Complaint , to and upon the:
Federal Bureau of Prisons
Colette Peters, Director
320 First Street, N.W.
Washington, D.C. 20534, by Certified Mail- return receipt requested, and I certify that I served the foregoing Complaint, together with a Summons, ( by certified mail- return receipt requested) by depositing them in the U.S. mail, with adequate postage, addressed to :
R. DeAguiar, Supervisory Attorney

Federal Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, S.W.
Building 2000
Atlanta, GA. 30331.

This _16th_ day of September, 2022.

/s / Lloyd J. Matthews
Ga. Bar No. 477620
Attorney for Plaintiff

3011 Towne Mill Avenue
Canton, GA. 30114
(404) 642-7350
LMMATTMATTHEWS@GMAIL.COM